## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SVO Quality Solution DMCC<br><br>Complainant,<br><br>v.<br><br>Nodus International Bank, Inc., Tomas Niembro Concha<br><br>Defendants. | Case No. 23-01313<br><br>Re: Breach of Contract, Damages Associated with the Breach of Contract, Torts. |

**OPPOSITION TO THE MOTION TO DISMISS UNDER BURFORD ABSTENTION**

Comes now, SVO Quality Solution DMCC ("SVO"), through its undersigned attorneys, and respectfully submits its Opposition to Nodus International Bank, Inc.'s ("Nodus") *Motion to Dismiss Under Burford Abstention*, Dkt. No. 30 ("*Motion to Dismiss*").

**I. INTRODUCTION AND BRIEF OF THE ARGUMENT**

The parties have submitted to the Court at least two previous motions regarding the Burford abstention.[1] The law remains the same, but as SVO, complying with its duty of candor, previously informed the Court, one fact has changed: on October 16, 2023, OCFI[2] issued a Resolution (the "*Resolution*") in an adjudicatory proceeding where SVO was not a party, appointing a Receiver and ordering Nodus' dissolution.

SVO's previous arguments are still dispositive. The Burford abstention applies to a court sitting in equity; this Court is sitting at law. An administrative scheme or order encumbering this dispute does not exist. Since SVO is not a party to OCFI's adjudicative proceeding, no timely and adequate judicial review is afforded to SVO.

Although the dissolution order may apply to Nodus and require its liquidation, it cannot encumber this contractual dispute because the OCFI does not have jurisdiction over it, as the OCFI

---

[1] *See* Nodus' motions at Dkt. Nos. 12 & 17, and SVO's at Dkt. Nos. 13 & 18-1.
[2] The Office of the Commissioner of Financial Institutions of Puerto Rico.

admitted in its letter of June 6, 2023, dismissing SVO's administrative complaint over its deposit agreement. Thus, if the Resolution were an administrative scheme that encumbers SVO's breach of contract of a depository agreement, it would be unconstitutional, as it would exceed the scope of powers delegated by the Legislative Assembly to the OCFI.[3] This new question of constitutionality defeats the *Motion to Dismiss*. Under First Circuit case law, a Burford abstention is not warranted when the regulatory scheme is at issue because of a constitutional challenge.[4]

## II. FACTUAL BACKGROUND

### a. The Adjudication Proceeding

On October 3, 2023, the OCFI filed a *Complaint and Provisional and Permanent Order for the Appointment of a Receiver and License Revocation* in Administrative Case No. C-23-D-004, ("*Complaint and Order*"). Critical to the analysis, the *Complaint and Order* defined 'Related Persons' as Nodus' directors, shareholders, and any entity controlled by Nodus' directors or shareholders, or any entity in which a Nodus director or shareholder has at least a 10% stake or significant control over its management.[5] Tomás Niembro and Juan Ramírez are both shareholders and directors, and José G. Suarez is a director.[6]

The OCFI averred that Related Persons, including Atlas Bank, possessed or controlled Nodus' assets and provided services to Nodus for a fee.[7] The OCFI also averred "that at least one of the Shareholders has been indirectly collecting royalties and/or dividends through Financial Technology through services rendered to allegedly complete the liquidation."[8] Nodus "has been involved in several transactions not authorized by the Administrator with Related Persons…"[9]

Nodus' explanation for the *Complaint and Order* is, therefore, disingenuous. Nodus alleged

---

[3] *Almieiro González v. Pinnacle Real Estate Home Team*, 173 DPR 363 (2009).
[4] *Vaqueria Tres Monjitas v. Irizarry*, 587 F.3d 464, 473 (1st Cir. 2009).
[5] *See* Dkt No. 33-1 at p.7, ¶4, Official Translation of the *Complaint and Order* filed by Nodus.
[6] *Id.*, ¶¶ 2-3.
[7] *Id.* at pp. 8-9, ¶¶17-21.
[8] *Id.*, ¶18.
[9] *Id.*

that the *Complaint and Order* was "mandatory due to the unsuccessful sale of Nodus' accounts to Atlas for an amount of or around $30,000,000.00."[10] It omits that Atlas Bank—a Related Person, owned or controlled by Nodus's shareholders or directors—was terminated by the *Superintendencia de Panamá* for dubious business acts.[11]

Considering the preceding, the OCFI provisionally appointed Driven Advisors, PSC, as the Receiver, pursuant to Section 19 of Act 52-1989, and delegated various administrative powers over Nodus.[12] Ultimately, the OCFI granted Nodus until October 13, 2023, to respond to the *Complaint and Order* and ordered Nodus and Tomás Niembro, Juan F. Ramírez, and José G. Suárez to appear before the OCFI for a hearing scheduled for October 17, 2023.[13]

On October 13, 2023, the OCFI and the shareholders and directors responded to the *Complaint and Order*. Neither objected the appointment of a Receiver or to Nodus' dissolution. On October 16, 2023, the OCFI entered a *Resolution*, issuing a final determination: "In accordance with the foregoing, as both parties accepted and have no real dispute over the Petition and Order, the license of Nodus is revoked, the Petition and Order is wholly confirmed and is made permanent until the liquidation proceedings of Nodus are completed."[14]

    b.  **The Purported Administrative Scheme.**

Considering that the *Resolution* incorporated the *Complaint and Order*, Nodus portrays the *Complaint and Order* as an administrative scheme that encumbers SVO's causes of action for breach of contract of a deposit agreement. The relevant provisions are in Sections VI & VII.

Section VI, Entrustment and Powers of the Receiver, provides as follows:

> The receiver shall manage the international banking entity by the provisions of [Act 52-1989] of this title and shall:(1) Take possession of the assets and liabilities, books, records, documents and files which belong to the international banking entity; (2) collect all loans, charges and fees owed to the international banking

---

[10] Motion to Dismiss at 2.
[11] *Complaint and Order* at p. 10, ¶¶ 20-21.
[12] *Complaint and Order*, Section VII.
[13] Complaint and Order at p.16.
[14] *See* Dkt 33-2 at 3, Certified Translation of the *Resolution* filed by Nodus.

3

entity; (3) pay all obligations and debts of the international banking entity, after having paid the necessary costs of the receivership, and (4) supervise the dissolution and liquidation of the international banking entity.[15]

Further, that section invests the Receiver with a fiduciary duty toward depositors and creditors and requires it to complete the Plan of Liquidation for their benefit.[16]

Section VII, 'Order of Appointment of the Receiver,' enumerates the Receiver's duties, establishing the process by which the Receiver shall manage Nodus in its dissolution.[17] None of these duties implicate depositors such as SVO or its breach of contract complaint.

### c. The Complaint and Order, however, presents two constitutional issues.

The *Complaint and Order* addresses two topics relevant to SVO. First, considering it adopted the Plan of Liquidation as amended on August 3, 2023, SVO would recover its property with a calculated loss of **at least** 10%.[18]

Second, in Section IX, the *Complaint and Order* purports to stay litigation:

> From the date of issuance of this Order, any claim, judicial or extrajudicial, that any individual or entity has against Nodus, must be brought to the attention of the Receiver and addressed within the liquidation process of the epigraph process. The Trustee may go through any of these proceedings to request a stay until and when the Trustee issues a determination.[19]

Both are unconstitutional acts by the OCFI, as discussed in Section IV of this Opposition.

### III. THE BURFORD ABSTENTION IS INAPPLICABLE

This is SVO's third motion concerning the Burford abstention. Pursuant to this Court's Local Rule 7 (f), SVO adopts by reference the argument in Section II of its *Opposition to Motion to Dismiss Under Burford Abstention* at Dkt. No. 13. There, SVO details the relevant modern case law of the Burford abstention, discussed by the Supreme Court and the First Circuit, and the two-pronged analytical framework this Court must analyze.

---

[15] *Complaint and Order* at 11, quoting PR Laws Annot. Tit. 7 §232o. SVO included the statute's official translation.
[16] *Id.* at p. 12. The Plan of Liquidation is in Dkt. No. 13-2.
[17] *Id.* at pp. 12-17.
[18] *Id.* at 8, ¶¶ 15-16.
[19] *Complaint and Order* at 17.

### a. **The three prerequisites for a Burford Abstention are not satisfied.**

The three prerequisites are: (1) that the court is sitting in equity, (2) that an administrative scheme or order encumbering this contractual dispute exists, and (3) that 'timely and adequate judicial review is available.

#### i. **The Complaint is at law, not in equity.**

The Complaint requests monetary relief for Nodus' breach of a deposit agreement. Its causes of action are based on statutory remedies, Arts. 1255 and 1538 of the Puerto Rico Civil Code. Therefore, the Complaint is not in equity. The first prerequisite is not met.

#### ii. **The *Complaint and Order* is not an administrative scheme that encumbers this breach of contract dispute.**

The "fundamental concern in *Burford* is to prevent federal courts from bypassing a state administrative scheme and *resolving* issues of state law and policy that are committed in the first instance to expert administrative resolution."[20] The instant Complaint, however, does not ask this Court to resolve any state law and policy issues committed to the OCFI. It is asking this Court to decide a contractual dispute.

On the flip side, the *Complaint and Order* does not consider or adjudicate SVO's causes of action, nor could it do so, as the OCFI declined to entertain them in SVO's administrative complaint for lack of subject matter jurisdiction. Specifically, on May 22, 2023, SVO filed an administrative complaint before the OCFI, which mirrors the *Complaint* before this Court.[21] The OCFI responded:

> Pursuant to the decision of the Supreme Court of Puerto Rico, in the case of *Ana Edita Santos de García v. Banco Popular de Puerto Rico*, 2007 TSPR 221, where it was indicated that *"the relationship between the bank and the acquirer named in a certificate of deposit is that of debtor-creditor and must be governed by the provisions of the Civil Code."* Said case also establishes that the Banking Law of Puerto Rico, Act No. 55 of May 12, 1933, as amended, 7 L.P.R.A. Sec. 1 et seq., *"only regulates the administrative legal aspect of the banks and not the relationship*

---

[20] *Chico Service Station, Inc. v. Sol Puerto Rico, ltd.*, 633 F.3d 20 at 29 (1st Cir. 2011) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361-64 (1989)).
[21] *See* Dkt. No. 15-1 at pp. 7-12.

5

*between the bank and the depositor," Banco Bilbao Vizcaya v. López Montes, res*. August 26, 2006, 168 D.P.R.___, 2006 TSPR 135; *Portilla v. Banco Popular*, 75 D.P.R. 100 (1953). *It is due to this legal framework that this agency does not have the jurisdiction to evaluate the controversy that you present to us.*[22]

The second prerequisite is not met.

<u>Nodus' administrative scheme arguments miss the mark</u>: Nodus argues that "there is a state administrative scheme committed to the control and supervision of *international banking entities* that is in risk of being bypassed in the event that this Court exercises its *diversity jurisdiction* over the instant Complaint."[23]

The question is not if an administrative scheme exists for *international banking entities*, but if an administrative scheme exists that encumbers, SVO, the deposit agreement, and the Civil Code cause of actions for breach of contract. As discussed in the previous section, the OCFI has already answered that no such administrative authority exists, let alone an administrative scheme based on non-existing administrative authority.

In its seventeen-page motion, Nodus does not illustrate how any specific provision of the *Complaint and Order* would warrant a Burford abstention. The *Complaint and Order* arises from the OCFI's administrative scheme developed under Section 19 of Act 52-1989, *Dissolution*, and Article 7 (c) of Regulation 5653, titled *Suspension, Revocation or Denial of a License*.[24] Article 7 (c) provides that "if deemed necessary or convenient, the Commissioner shall order the dissolution and/or liquidation of the IBE whose license has been suspended, revoked or surrendered under Section [19] of the Act."[25]

SVO's claims do not concern the OCFI's authority to regulate Nodus', revoke its license or liquidate it. They concern SVO's right to recover monies it owned and entrusted to Nodus pursuant to a deposit agreement ruled by the Puerto Rico Civil Code. SVO does challenge the OCFI's

---

[22] *See* Dkt. No. 15-1 at pp. 1-3.
[23] Motion to Dismiss at 12.
[24] *Complaint and Order*, Jurisdiction section.
[25] SVO includes the official translations of Regulation 5653 as Exhibit 1.

pretension to stay litigation of a claim over which it expressly disavowed jurisdiction and its purported authority to deprive SVO of its monies and property in an administrative process in which SVO did not and cannot participate.

### iii. No 'timely and adequate' state review is available.

As the Supreme Court of Puerto Rico has distinguished, administrative regulatory and adjudication proceedings differ. The former is quasi-legislative; the latter is quasi-judicial.[26] The regulatory proceedings apply to the public, while adjudications apply to the parties to those proceedings.[27]

As defined by the LPAUG[28], "Adjudication.- Means the statement whereby an agency determines the rights, obligations or privileges corresponding to a <u>party</u>."[29] A Party "means any legally authorized person or agency towards whom the action of an agency is specifically addressed or a party to said action or who is allowed to intervene or participate therein or who has filed a petition for the review or compliance of an order or who is designated as a party in said procedure."[30]

The *Complaint and Order* initiated an adjudicatory proceeding before the OCFI, C-23-D-004. This quasi-judicial proceeding resulted in the *Resolution*. Relevant to this analysis, this *Resolution* provides that: "A *party* adversely affected by an OCFI *resolution*, partial or final order may request reconsideration within twenty (20) days …. [and] a *party adversely* affected by a final order or resolution … may request file a request for judicial review with the Puerto Rico Court of Appeals, within thirty (30) days pursuant to Section 4.2 of Act No. 38-2017."[31] SVO was not a party to this

---

[26] *J.P. v. Frende Unido I*, 165 DPR 445, 461 (2005).
[27] *Id.* at 463-64.
[28] Act 38-2017.
[29] PR Laws Annot Tit. 3 §9603. While Act 38-2017 does not have an official translation, the definition is the same as the prior Administrative Procedure Act, which had an official translation, PR Laws Annot Tit. 3 §2102.
[30] *Id.*
[31] *Resolution* at pp. 2-3. The certified translation submitted by Nodus at Dkt No. 33-2, changes the meaning of the order. *Cf.* Dkt No. 33-2 and Dkt. No. 25-2 is the original Spanish document submitted by Nodus.

proceeding which adjudicated Nodus' rights. Hence, SVO cannot seek judicial review from the *Resolution*. Thus, the "timely and adequate" judicial review requirement is not met.

### b. Even if the prerequisites were satisfied, a Burford abstention is not warranted.

However, it is essential to highlight that abstention is not required "whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy."[32] "The Burford doctrine does not require abstention merely because the federal action may impair the operation of a state administrative scheme or overturn state policy."[33]

The Burford abstention two-pronged hinges on "(1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[34]

### i. This *Complaint* does not ask difficult questions of state law bearing on policy problems.

The *Complaint* does not present a difficult state law question but just an ordinary contractual dispute that requires an interpretation of a private contract, that is, the law between the parties as stated in Art. 1233 of the Civil Code.[35] This Court is in the same position as any other Puerto Rico local court in analyzing the contract and disputes arising thereof. The regulatory scheme or the public policies behind Act 52-1989 are irrelevant, as that law does not establish an administrative proceeding or scheme concerning disputes over a deposit agreement. Additionally, Nodus' argument fails because the OCFI does not have jurisdiction over the matter.

### ii. Exercising jurisdiction would not disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern.

---

[32] *Id.*
[33] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989). *See also Chico*, 633 F.3d at 30 and *Forty-Six Hundred LLC*, 15 F.4th at 75.
[34] *Chico*, 633 F.3d 29 (quoting *New Orleans*, 491 U.S. at 361.)
[35] PR Laws Annot Tit. 31 § 9754.

This court is asked to remedy a breach of contract, which this Court routinely does, and the OCFI does not have jurisdiction to address such claims. This Court's eventual decision will not affect public policy or the OCFI's faculties under Act 52-1989 to regulate and police international banks. The Burford abstention applies only in "unusual circumstances," where the federal court risks usurping the state's 'regulatory decision-making center.' The OCFI, however, is not the decision-maker regarding contractual disputes.

As discussed by the OCFI, the *Complaint and Order* arose from serious allegations that Nodus or its shareholders and directors were embezzling the depositors' funds. To protect said funds, the OCFI seized control of Nodus and appointed a receiver to manage its affairs. SVO's *Complaint* does not concern or implicate OCFI's authority to do what it did to Nodus. SVO's *Complaint* concerns whether Nodus could do what it did to SVO, by refusing to return to SVO funds that belonged to SVO and which SVO entrusted to Nodus per the deposit agreement.

One of the OCFI's responsibilities is to "ensure that the interest of those who are linked to the industries by being depositors … are protected."[36] The dissolution follows this principle by impeding the embezzlement of the depositors' funds. That is not inconsistent with nor would be affected by any remedy this Court may grant.

Nodus argues that "the risk of the District Court becoming the 'regulatory decision-making center' and bypassing the state administrative scheme bears the unusual circumstance that makes abstention proper due to the fact that international banking entities can *only accept deposits and borrow money from foreign persons*."[37] The implication is that this Court's diversity jurisdiction would make it the forum of choice for litigation by the depositors against the international banks. But the captioned case, as we have discussed, presents no such risk because the controversy at hand does not carry the risk of interfering with an administrative regulatory scheme. Also, by

---

[36] Statement of Motion of Act 4-1985.
[37] Motion to Dismiss at 14.

relying on diversity jurisdiction, Nodus recognizes a local court, not the OCFI, would have to resolve this matter.

## IV. BURFORD ABSTENTION IS UNWARRANTED BECAUSE OF UNDERLYING CONSTITUTIONAL QUESTIONS.

When SVO filed its *Opposition* and *Sur-Reply* regarding Nodus' original *Motion to Dismiss*, the OCFI had not issued the *Resolution*. Thus, SVO did not include arguments based on speculation of what it would mean if the OCFI acted as it now has. Now, the *Resolution* presents at least two constitutional questions, which precludes the Burford abstention. In *Vaquerías Tres Monjitas, Inc. v. Irizarry*[38] the defendant argued that the district court should have abstained from hearing a case under the Burford abstention. The First Circuit disagreed and stated, "Burford does not apply when the effect of an entire regulatory scheme is challenged as unconstitutional." [39]

Thus, even if the *Complaint and Order* is an administrative scheme encumbering the *Complaint*, a Burford abstention is unwarranted because the provisions affecting SVO's property rights are unconstitutional, to wit, the litigation stay is Section IX of *Complaint and Order,* and its presumption that Nodus may return to its depositors, less than 100% of the money in their accounts.

### a. The OCFI exceeded the faculties delegated by the Legislative Assembly.

An administrative agency's jurisdiction, power and faculties are derived from its enabling statute. An agency can only perform the functions delegated to it by the Legislative Assembly and those that necessarily derive from its primary activity or assignment. If the administrative agency's actions exceed the delegated powers, its actions are *ultra vires*.[40]

As the Supreme Court of Puerto Rico has stated.

> [a]n administrative agency cannot assume jurisdiction over any situation that is not authorized by law; that is, *neither necessity, nor utility, nor convenience* can replace the statute as the source of the power of an administrative agency. *That is why any doubt regarding the existence of said power must be resolved against its exercise.*[41]

---

[38] 587 F.3d 464, 473 (1st Cir. 2009).
[39] *Id.* at 474
[40] *Amieiro Gonzalez v. Pinnacle Real Estate Home Team*, 173 DPR 363, 372 (2008).
[41] *Id.* at 372 (emphasis added) (translation ours).

Act 4-1985 is the OCFI's enabling statute. "The [OCFI] shall be charged with the main responsibility of controlling and supervising the financial institutions that operate or do business in the Commonwealth of Puerto Rico, among its other functions provided in this chapter."[42] The faculties of the OCFI are listed in Act 4-1985. None of them have to do with the relationship between the bank and the depositors, the deposit agreement, or the depositors.

The only faculty relevant to the captioned case is detailed in section (b) of Act 4-1985. This section, in sum, provides that if the OCFI determines that a financial institution:

> Is operated or administered in such a way that the general public or persons and entities that have funds or shares in its custody are in danger of being defrauded, *and in the absence of a specific provision in the law to regulate the financial institution in question and which likewise empowers it*, the Commissioner may assume the direction and administration of the financial institution, and promptly appoint a trustee who, in the case of insured financial institutions can be its insuring entity.[43]

The rest of section (b) details the appointment of the receiver. This section nor the statute allows the OCFI to stay litigation over any private claims, let alone pending claims regarding breach of contract of deposit agreement, for which it has no jurisdiction. Neither does Act 52-1989, which is the special legislation that regulates International Banks.

Section 19 of Act 52-1989, titled Dissolution, provides—<u>in its entirety</u>:

> (a) The Commissioner may appoint a receiver and order the dissolution of an international banking entity if the license of said international banking entity or of the person of which the international banking entity is a unit is revoked or surrendered under § 232n of this title.
> (b) The receiver appointed shall be a person of recognized moral qualities with vast experience in the field of banking or finance, and his performance with the international banking entity shall be secured by an adequate bond to be paid by the international banking entity itself.
>  (c) The receiver shall manage the international banking entity in accordance with the provisions of §§ 232 et seq. of this title and shall:
>> (1) Take possession of the assets and liabilities, books, records, documents, and files which belong to the international banking entity;
>> (2) collect all loans, charges, and fees owed to the international banking entity;

---

[42] PR Laws Annot. Tit. 7 § 2003.
[43] *Id.*

>   (3) pay all obligations and debts of the international banking entity, after having paid the necessary costs of the receivership, and
>   (4) supervise the dissolution and liquidation of the international banking entity.[44]

Neither of the foregoing provides a litigation stay nor allows the OCFI to grant one.

In Puerto Rico, a litigation stay cannot be inferred, as the Supreme Court of Puerto Rico held in *San Jose Realty S.E. v. El Fenix de PR*: the Court's jurisdiction over insurance claims is limited because of the statutory nature of these proceedings.[45] The Insurance Code[46] specifically provides a stay of litigation in Article 40.210: "Upon issuance of an order appointing a liquidator of a domestic insurer or an alien insurer domiciled in Puerto Rico, no action at law shall be brought *against the insurer* or the liquidator, whether in Puerto Rico or elsewhere, nor shall an action of that nature be maintained or entered after issuance of such order."[47] Such a provision is notoriously absent from Act 4-1985 and Act 52-1989.

Moreover, the OCFI's admissions that it lacks jurisdiction over deposit agreements are sufficient to determine not only that it cannot stay litigation over such an agreement, but also that it cannot "discharge" Nodus from its obligation to return to SVO the monies it deposited. That would be a power akin to that of a federal bankruptcy court and which such courts exercise only pursuant to authority granted under Article I, Sec. 8 of the United States Constitution and the federal Bankruptcy Code, or power akin to that granted to the Puerto Rico Insurance Commissioner under Act 77-1957.

Because the OCFI has not been vested with authority over deposit agreements, the power to stay litigation, or the power to discharge debt, any attempt to do so is *ultra vires* and as such null and void, and any argument by Nodus that the OCFI may do these things is, simply, wrong.

>   b. **Even if the OCFI had jurisdiction over the deposit agreement, its actions deprive SVO of its property rights without procedural due process of law.**

---

[44] PR Laws Annot Tit. 7 § 232o.
[45] 157 DPR 427, 437-38 (2002).
[46] Act 77-1957, PR Laws Annot Tit. 26 § 101 et seq.
[47] PR Laws Annot Tit. 26 § 4021.

As previously discussed in Section III (a)(iii), the OCFI has both regulatory and adjudicative authority. Adjudicatory powers are quasi-judicial, whereby the OCFI adjudicates the rights, obligations, or privileges of the parties to a proceeding. For an Adjudicatory proceeding to not violate due process, at a minimum, it must: (1) provide adequate notice, (2) submit the issue before an impartial adjudicator, (3) provide the opportunity to be heard, (4) the decision be based on evidence submitted on the record, among others.[48] None of these were safeguarded as to OCFI in Administrative Case No. C-23-D-004.

On the other hand, in exercising regulatory powers, an administrative agency can issue two types of general rules: non-legislative and quasi-legislative.[49] Non-legislative rules do not alter the rights or obligations of citizens; thus, the agency is exempt from complying with LPAUG's formal requirements.[50] But legislative rules that create rights, impose obligations, and establish a pattern of conduct with the force of law become regulations.[51] The LPAUG establishes a formal procedure to enact them, which aims to safeguard the affected person's due process.

The LPAUG requires that an administrative agency that enacts, amends, or repeals a Regulation comply with the formal requirements of section 2.1 of the LPAUG: (1) notify the general public that a regulation will be enacted; (2) provide the general public with an opportunity to express themselves, including participating in public hearings if necessary or required, (3) submit the Regulations to the Department of State for its approval, and (4) publish the approved Regulations.[52]

Any legislative rule that does not comply with all these requirements is null and void.[53] Noncompliance with these requirements warrants a declaration of unconstitutionality since it

---

[48] *See PVH Motor, LLC v. Junta de Subasta de la Adminsitración de Servicios Generales*, 209 DPR 2022, 132 (2022). *See also* Art. 3.1 of the LPAUG, PR Laws Annot. Tit. 3 § 9630.
[49] *Sierra Club v. Junta de Planificación*, 203 DPR 596, 605 (2019).
[50] *See* PR Laws Annot. Tit. 3 § 9630.
[51] *Sierra Club*, 203 DPR at 605.
[52] PR Laws Annot. Tit. 3 §§ 9611-9613 & 9621
[53] PR Laws Annot. Tit. 3 § 9617.

ignores the due process warranties afforded by the Constitution.[54]

The litigation stay and the OCFI's purported intervention with SVO's property rights—as well as the property rights of every depositor—is unconstitutional because they arise from an adjudicatory proceeding where SVO, or in fact, no depositor, was a party. Therefore, the *Resolution* could not validly include in it any determination affecting SVO's property rights.

If said *Resolution* were deemed a regulation, it would likewise fail to comply with every formal requirement under the LPAUG, rendering it unconstitutional as well.

Lastly, the Supreme Court of Puerto Rico held that Agencies have a duty to enact regulations interpreting the powers delegated to them in order to avoid arbitrary and unfair application and provide adequate guidance so that affected parties by an administrative action are duly informed of the current state of the law.[55] The only regulation concerning Act 52-1989, Regulation 5653, reveals that the OCFI has not even interpreted its powers as they pertain to a "dissolution".

The terms "dissolution" and "liquidation" appear once in said regulation, specifically in Article 7(3)(c), which concerns Suspension, Revocation, or Denial of a License, which in its entirety provides: "If deemed necessary or convenient, the Commissioner shall order the dissolution and/or liquidation of the IBE whose license has been suspended, revoked or surrendered under Section [19] of the Act."[56] Thus, the OCFI has never enacted regulation concerning a dissolution proceeding, let alone one providing for a stay of litigation or allowing the discharge of debts.

V. **CONCLUSION**

The Burford abstention is an extraordinary exception arising out of exceptional circumstances and, as the Supreme Court has stated, the "circumstances that fit the mold are rare."[57] Abstention is not even required "whenever there exists such an [administrative scheme], or even in all cases

---

[54] See *Fuentes Bonilla v. ELA*, 200 DPR 364, 378 (2018).
[55] *Asoc de Farmacias v. Depto. de Salud*, 156 DPR 105, 119 (2002).
[56] Exhibit 1.
[57] *Chico*, 633 F.3d at 30.

where there is a potential for conflict with state regulatory law or policy."

Considering the controversy at issue, neither of the three prerequisites to the Burford abstention test, nor the two-pronged Burford abstention questions, favor abstention. Further, the *Resolution* unconstitutionally deprived SVO of its property without due process of law, by issuing orders that exceed the OCFI's statutory authority, in an adjudicative process where SVO was provided no opportunity to be heard. These orders include a stay of litigation and allowing Nodus to return to SVO its deposits at a loss to be determined in the future, in a process where SVO also had no participation. These are prerogatives that the OCFI does not have under Act 4-1985, Act 52-1989, and for which the OCFI has never issued an applicable Regulation—let alone one that complies with the LAPUG. As such, the OCFI's actions are ultra vires, null and void, and unconstitutional. The mere existence of these constitutional questions defeats a Burford Abstention.

**WHEREFORE,** SVO respectfully requests that this Court deny Nodus' Motion to Dismiss.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, December 20, 2023.

**REICHARD & ESCALERA, LLC**
MCS Plaza, Piso 10
Ave. Ponce de León 255
Hato Rey, PR 00917
PO Box 364148
San Juan, PR  00936-4148
Tel. (787) 777-8888/Fax (787) 765-4225

*/s/ Sylvia M. Arizmendi López de Victoria*
Sylvia M. Arizmendi López de Victoria
USDC-PR No. 210714
arizmendis@reichardescalera.com

*/s/ Jose R. Feliciano Boada*
Jose R. Feliciano Boada
USDC-PR No. 307908
feliciano@reichardescalera.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that we electronically filed the foregoing documents on this same date through the Court's CM/ECF system. Notice of this filing will be sent to all parties registered therein by operation of the Court's electronic filing system.

*/s/ José R. Feliciano Boada*
USDC-PR 307908
