# COMMISSIONER OF FINANCIAL INSTITUTIONS
## GOVERNMENT OF PUERTO RICO
## SAN JUAN, PUERTO RICO

### SUPPLEMENTARY SLIP

### TO IMPLEMENT THE PROVISIONS OF ACT NO 52
### OF AUGUST 11, 1989, KNOWN AS
### "THE INTERNATIONAL BANKING CENTER REGULATORY ACT"
### AS AMENDED BY ACT NO. 121 OF AUGUST 11, 1996

| | |
|---|---|
| Regulation No | Number  *5653* |
| Agency adopting Regulation | Office of the Commissioner of Financial Institutions |
| Name and Title of Approving Agency Chiefs | Mr. Joseph P. O'Neill, Commissioner of Financial Institutions |
| With the recommendation and endorsement of | Hon. Manuel Díaz Saldaña<br>Secretary of the Treasury<br>President, Financial Board |
| Overruled, Amended or Suspended Regulations | Regulation No. 4324<br>titled "To Complement and Implement Act No. 52 of August 11, 1989", known as "The International Banking Center Regulatory Act". |
| Statutory Authority | Act No. 52, approved on August 11, 1989, as amended, known as "The International Banking Center Regulatory Act" ;<br>Act No. 121 of August 11, 1996;<br>Act No. 4 of October 11, 1985, as amended, known as "Office of the Commissioner of Financial Institutions' Act" |
| Publication Date | May 30, 1997<br>June 1, 1997 |
| Newspaper | The San Juan Star |
| Approval Date | July 23, 1997 |
| Filing Date at the Department of State | July 23, 1997, 2:55 pm |

-1-

Effective Date                                   30 days after approval
                                                 *August 22, 1997*


## CERTIFICATION


I, Joseph P. O'Neill, Commissioner of Financial Institutions, certify that the procedures followed for the adoption of this Regulation was set forth pursuant to Act No 170 of August 12, 1988, and the Regulation attached to this supplementary slip has been reviewed and does not contain any typographic or clerical error.




                                                 Joseph P. O'Neill
                                                 Commissioner

-2-

**COMMISSIONER OF FINANCIAL INSTITUTIONS**
**GOVERNMENT OF PUERTO RICO**
**SAN JUAN, PUERTO RICO**

**REGULATION NO.  _5653_**

**TO IMPLEMENT THE PROVISIONS OF ACT NO 52 OF AUGUST 11, 1989, KNOWN AS "THE INTERNATIONAL BANKING CENTER REGULATORY ACT" AS AMENDED BY ACT NO. 121 OF AUGUST 11, 1996**

Page

| | | |
|---|---|---|
| ARTICLE 1. | SHORT TITLE | 1 |
| ARTICLE 2. | AUTHORITY | 1 |
| ARTICLE 3. | PURPOSE AND SCOPE OF REGULATION | 1 |
| ARTICLE 4. | DEFINITIONS | 2 |
| ARTICLE 5. | ORGANIZATION | 4 |
| ARTICLE 5A | PROCEDURE TO REQUEST AN AUTHORIZED CAPITAL OF LESS THAN FIVE MILLION DOLLARS (US $5,000,000) AND/OR PAID CAPITAL OF LESS THAN TWO HUNDRED AND FIFTY THOUSAND DOLLARS (US $250,000) | 6 |
| ARTICLE 5B. | PROCEDURE TO REQUEST THE WITHHOLDING OF UNENCUMBERED ASSETS OR GUARANTEES IN PUERTO RICO FOR AN AMOUNT LESS THAN THREE HUNDRED THOUSAND DOLLARS ($300,000) | 7 |
| ARTICLE 5C. | PROCEDURE TO HIRE LESS THAN FOUR FULL-TIME EMPLOYEES IN PUERTO RICO | 8 |
| ARTICLE 6. | APPLICATION PROCEDURE AND GRANTING OF PERMIT | 9 |
| ARTICLE 7. | GRANTING OF A LICENSE TO OPERATE AN IBE | 11 |
| ARTICLE 8. | AMENDMENTS AND ISSUANCE OF ADDITIONAL CAPITAL | 15 |
| ARTICLE 9. | CHANGE IN CONTROL | 16 |
| ARTICLE 10. | PERMITTED ACTIVITIES | 17 |
| ARTICLE 10A. | PROCEDURE TO REQUEST AUTHORIZATION TO FINANCE PROJECTS IN PRIORITY AREAS FOR THE GOVERNMENT OF PUERTO RICO IN EXTRAORDINARY CASES. | 23 |
| ARTICLE 10B. | PROCEDURE TO ESTABLISH BRANCHES | 26 |
| ARTICLE 10C. | PROCEDURE TO REQUEST AUTHORIZATION TO ESTABLISH SERVICE UNIT OR OFFICE IN PUERTO | RICO |

31

| ARTICLE 10D. | PROCEDURE TO REQUEST AUTHORIZATION TO PROVIDE OTHER FINANCIAL SERVICES TO INTERNATIONAL BANKING ENTITIES OR FOREIGN ENTITIES OUTSIDE OF PUERTO RICO. | 36 |
| ARTICLE 11. | RECORDS, REPORTS, AND SUPERVISION | 38 |
| ARTICLE 12. | CONFIDENTIALITY | 40 |
| ARTICLE 13. | REMEDIES AND PENALTIES | 41 |
| ARTICLE 14. | EXCLUSION CLAUSE | 42 |
| ARTICLE 15. | REPEAL | 42 |
| ARTICLE 16. | EFFECTIVE DATE | 42 |
| ARTICLE 17. | APPROVAL DATE | 43 |

**COMMISSIONER OF FINANCIAL INSTITUTIONS**
**GOVERNMENT OF PUERTO RICO**
**SAN JUAN, PUERTO RICO**

**REGULATION NO.** _5653_

**TO IMPLEMENT THE PROVISIONS OF ACT NO 52 OF AUGUST 11, 1989, KNOWN AS "THE INTERNATIONAL BANKING CENTER REGULATORY ACT" AS AMENDED BY ACT NO. 121 OF AUGUST 11, 1996**

**ARTICLE 1.        SHORT TITLE**

This regulation shall be known as "Regulation of the International Banking Center Regulatory Act" (hereinafter referred to as the "Regulation").

**ARTICLE 2.        AUTHORITY**

This Regulation is adopted pursuant to the authority conferred by Act No. 52, approved August 11, 1989, as amended by Act No. 121 of August 11, 1996 ("Act 121"), known as "The International Banking Center Regulatory Act" (the "Act"), Act No. 4 of October 11, 1985, as amended, that created the Office of the Commissioner of Financial Institutions, and in accordance with Act No. 170 of August 12, 1988, as amended, known as "The Uniform Administrative Procedures Act of Puerto Rico."

**ARTICLE 3.        PURPOSE AND SCOPE OF THE REGULATION**

This Regulation is adopted with the purpose of complementing and clarifying the provisions of the Act, and shall apply to all International Banking Entities (IBE) established or to be established in the future in Puerto Rico under the Act.

The Regulation supplies the provisions required by law regarding the faculties and activities authorizing the international banking entities.

Also, this Regulation provides the provisions required by law regarding the organization of the international banking entities, which include rights to assessment and evaluation during the organization process, the amount and manner of the guarantees that shall be withheld in Puerto Rico and other matters.  Several Articles of the Regulation provide regarding the operative capital and the personnel of the International Banking Entities.  Likewise, this Regulation provides the provisions required for regulating the institutional changes of the international banking entities such as, among others, changes in control, amendments to articles of incorporation or internal regulations.

Lastly, the Regulation contains several provisions regarding administrative and audit matters pertaining to administrative fines, penalties and procedures to request authorizations and permits to the Commissioner in accordance to the Act, as amended.

## ARTICLE 4.         DEFINITIONS

For purposes of this Regulation:

1.    **"Commissioner" -** means the Commissioner of Financial Institutions.

2.    **"Parent Company" -** means any juridical person who directly or indirectly controls twenty five percent (25%) of the interest in the capital of an IBE or who controls in any manner the election of the majority of the ruling body of such IBE.

3.    **"IBE" -** means an International Banking Entity to which a license has been issued pursuant to Section 7 of the Act.

4.    **"Person" -** means an individual, corporation, partnership, association, unit, trust or

estate, syndicate or enterprise of any kind, government instrumentality, political subdivision or agency thereof.

5.    **"Domestic Person" -** means any natural person who is a resident of Puerto Rico, or a person incorporated, organized or authorized to operate under the laws of Puerto Rico, or a foreign juridical person whose principal place of business is located in Puerto Rico, and the Government of Puerto Rico or any of its instrumentalities, political subdivisions or agencies. An International Banking Entity shall not be considered a domestic person for purposes of this Regulation.

6.    **"Foreign Person" -** means any person who is not a domestic person.

7.    **"Resident of Puerto Rico" -** includes any natural person who has established himself in Puerto Rico with a definite purpose or interest, the nature of which requires a lengthy stay in Puerto Rico.  Such person must make Puerto Rico his home temporarily, even when his intention is to return to his domicile outside of Puerto Rico after the purpose or interest that originally brought him to Puerto Rico has been terminated or abandoned.  Such person shall be deemed to be a resident of Puerto Rico from the date on which he establishes his residence in Puerto Rico, even if temporarily.  In order to be a considered a resident of Puerto Rico for purposes of this Regulation, such person must be subject to payment of income taxes in Puerto Rico.

8.    **"Subsidiary" -** means any IBE whose capital is controlled twenty five percent (25%) or more by another person or any IBE in which the election of the majority of the ruling body is controlled by another person.

9.  **"Unit**" - means any subdivision or branch of any person other than an individual, whose business and operations are separate and distinct from other businesses and operations of such person, as may be required by the Act.

10. **"Branch" -** means any kind of facility established by an IBE outside of Puerto Rico.

11. **"Unit of service" -** means such facility established by an IBE in Puerto Rico in which only determined banking operations take place.  The units of service shall never accept deposits or establish accounts if such transaction entails the acceptance of a deposit.

12. **"Office" -** means the site in which only determined administrative activities regarding the operation of the IBE take place.  With regards to IBEs that are engaged in the banking business or financial services, no banking operations shall take place in such site except for those which are incidental to its own administrative duties.

13. **"Principal Office" -** means the site where the offices in which the IBE carries out its business, and operational and administrative policies are set forth.

## ARTICLE 5.        ORGANIZATION

Every IBE must meet the following requirements in its organization.

1.  Shall be organized only as a corporation, partnership, trust, association, or any other similar juridical person or as a unit thereof.  No permission to organize or licenses to operate will be granted to individuals.

2.  The name of the IBE must include the words "International", "Foreign", or "Overseas" or other similar words which connote the international character of the

IBE. No IBE may be organized using the same name or one which resembles the name of any other organization so as to be confusing.

3.  Will obtain acceptable office space in Puerto Rico wherein the IBE will conduct its business with the required personnel and will maintain the necessary records, documents and equipment.  In the event that the IBE is a unit of another person, said premises and the activities of the IBE must be severed and separated from any other activity being performed by the person of which the IBE is a unit.

4.  The IBE shall have authorized or proposed capital of at least five million dollars (US $5,000,000) and paid-in capital of at least two hundred fifty thousand dollars (US $250,000).  Upon request of a party, the Commissioner may approve an authorized and/or paid capital less than the above amount, in such case, the provisions of Article 5A of this Regulation shall apply.

5.  It shall possess and maintain in Puerto Rico at least three hundred thousand dollars (US $300,000) in unencumbered assets or financial guarantees acceptable to the Commissioner.  Such guarantees may consist of deposits in the Government Development Bank for Puerto Rico or the Economic Development Bank for Puerto Rico or in banks authorized to do buisiness in Puerto Rico, subject to withdrawal with the written consent of the Commissioner, or bonds and obligations of the Government of Puerto Rico, its municipalities or instrumentalities.  The Commissioner may establish other financial instruments, terms and conditions for compliance with this requirement.  Upon request of a party, the Commissioner may

approve the withholding of unencumebered assets or guarantees in Puerto Rico for an amount less than $300,000, in which case, Article 5B of this Regulation shall be binding.

6.    The securities or other financial instruments held by the IBE in compliance with the requirement in paragraph (5) of this Article, shall have, at all times, an aggregate market value equal to or greater than the amount of unencumbered assets that the IBE shall finally withhold in Puerto Rico.  The books of the IBE shall reflect, at all times, the marked to market value of such securities or financial instruments. In case of detriment or loss of value of such instruments, the IBE shall immediately provide for this deficiency.

7.    Upon commencement of operations, every IBE shall hire in its offices in Puerto Rico a minimum of four (4) full- time persons residents of Puerto Rico.  Upon request by a party, the Commissioner may approve a lesser number of full-time employees in its offices in Puerto Rico, in such case, Article 5C of this Regulation shall be binding.

**ARTICLE 5A.    PROCEDURE TO REQUEST AN AUTHORIZED CAPITAL OF LESS THAN FIVE MILLION DOLLARS (US $5,000,000) AND/OR PAID CAPITAL OF LESS THAN TWO HUNDRED AND FIFTY THOUSAND DOLLARS (US $250,000)**

Every international banking entity may request the Commissioner, and he, upon his sole discretion, may approve or deny, the commencement of operations with an authorized or proposed capital of less than five million dollars (US $5,000,000) and/or paid capital of less than two

hundred and fifty thousand dollars (US $250,000), as provided by this Article.

1. **General Requirements to Apply for an Authorized Capital of an Amount Less Than Five Million Dollars (US $5,000,000) and/or Paid Capital of less than Two Hundred and Fifty Thousand Dollars (US $250,000)**

Every IBE that is interested in commencing operations with an authorized capital of less than five million dollars and/or paid capital of less than two hundred and fifty thousand dollars, shall file a written application before the Commissioner, in the forms prepared by him, which shall be sworn by the applicant before a notary public authorized to practice in Puerto Rico. Such application must contain the information which is required by the Commissioner in the forms.

2. **Period to Approve or Deny an Application**

Every application for an authorized capital of an amount less than five million dollars and/or paid capital of less than two hundred and fifty thousand dollars shall be approved or denied by the Commissioner, upon his sole discretion, as part of the determination he may make regarding the IBE's request to organize, according to the provisions of Article 6(4) of this Regulation.

**ARTICLE 5B.     PROCEDURE TO APPLY FOR WITHHOLDING OF UNENCUMBERED ASSETS OR GUARANTEES IN PUERTO RICO FOR AN AMOUNT LESS THAN THREE HUNDRED THOUSAND DOLLARS (US $300,000)**

Every International Banking Entity may apply, to the Commissioner, and he, upon his sole

discretion, may approve or deny, the withholding of unencumbered assets or guarantees in Puerto Rico for an amount less than $300,000.  Such application shall be filed as provided in this Article.

1.    **General Requirements**

Every IBE that applies for the withholding of unencumbered assets or guarantees in Puerto Rico for an amount less than $300,000 shall file a written application before the Commissioner, in the forms prepared by him, which shall be sworn by the applicant before a notary public authorized to practice in Puerto Rico.  Such application shall include the information required by the Commissioner in the forms.

2.    **Period to Approve or Deny an Application**

Every application for the reduction of the amount of unencumbered assets or guarantees to be physically withheld in Puerto Rico shall be approved or denied by the Commissioner, upon his sole discretion, as part of the determination he may make regarding the application of an IBE of a permit to organize, pursuant to the provisions of Article 6(4) of this Regulation.  With a currently operating IBE, such application shall be approved or denied by the Commissioner pursuant to the provisions of the "Regulation to Establish the Rules of Procedure for the Issuance of Licenses Franchises and Permits", issued by the Commissioner on December 20, 1989, or any amendments or substitutions thereof.

**ARTICLE 5C    PROCEDURE TO HIRE LESS THAN FOUR FULL-TIME EMPLOYEES IN PUERTO RICO**

Every International Banking Entity may apply to the Commissioner, and he, upon his sole discretion, may approve or deny any application to hire less than four full-time employees in its

offices in Puerto Rico.  Such application shall be filed pursuant to this Article.

1.      **General Requirements**

Every IBE which requests to hire less than four (4) full-time employees in its offices in Puerto Rico shall file a written application before the Commissioner, in the forms prepared by him, which shall be sworn by the applicant before a notary public authorized to practice in Puerto Rico. Such application shall include the information required by the Commissioner in the forms.

2.      **Period to Approve or Deny the Application**

Every application to hire less than four full-time employees in the offices of the IBE in Puerto Rico shall be approved or denied by the Commissioner, upon his whole discretion, as part of the determination he may make regarding the application of the IBE for a permit to organize, pursuant to the provisions of Article 6(4) of this Regulation.  With a currently operating IBE, such application shall be approved or denied by the Commissioner pursuant to the "Regulation to Establish the Rules of Procedure for the Issuance of Licenses, Franchises and Permits" issued by the Commissioner on December 20, 1989 or any other regulation approved subsequently to amend or substitute it.

**ARTICLE 6.  APPLICATION PROCEDURE AND GRANTING OF PERMIT**

1.      **Application for a Permit**

Every application for a permit to organize an IBE shall be in writing in the forms prescribed by the Commissioner and shall be sworn by the applicant before a notary public authorized to practice in Puerto Rico.  Said application shall be submitted together with the additional documents required in the Application Form and a five thousand dollars ($5,000)

non-refundable fee in the form of a money order, official check or certified check payable to the Secretary of the Treasury of Puerto Rico.

**2.      Investigation**

The Commissioner shall investigate all the data and information furnished in the application and all other additional information which he may deem relevant, such as, the financial capacity and experience of the applicant, as well as the character, integrity and experience in, or knowledge of, banking or international business of applicant's management.   In every application, the Commissioner shall investigate any natural or juridical person who holds or controls or intends to hold or control ten percent (10%) or more of the interest in the capital of the IBE without this being understood as a limitation to the investigative power of the Commissioner.

3.      **Investigation Expenses**

The expenses that the Commissioner may incur in due to an investigation provided herein shall be paid for by the applicants.   In such cases that the Commissioner deems that such expenses exceed the amount of ten thousand dollars ($10,000), the applicant shall be so notified.   The Commissioner shall make such claim for investigation expenses by the filing of a duly filled Requisition for Reimbursement in the form that the Commissioner may design for such purposes.

4.      **Approval or Denial of Permit**

After the required investigation and the payment of the costs of investigation as set forth in the aforementioned paragraph (3), the Commissioner, upon his whole discretion,

shall approve or deny the permit to organize an IBE, which permit, if approved, shall contain the permitted activities in which a proposed IBE may engage in once the license is issued and may include any conditions which the Commissioner may deem necessary. The permit cannot be sold, transferred, assigned, encumbered or in any way pledged in favor of another person. The granting of a permit pursuant to this Article does not give a right to commence operations until a license is issued under Article 7 of this Regulation.

5.   **Term of the Permit**

Every permit granted by the Commissioner shall be in effect for a period of six (6) months from the date it was granted, during which time the IBE shall be organized and the application for the corresponding license filed. Upon request of a party, in meritorious or exceptional cases, the permit may be renewed at the Commissioner's discretion.

6.   **Continuos Obligation to Inform**

The holder of the permit shall have the continuos obligation to inform the commissioner of any material change in the information submitted with the application for a permit. Failure to notify any material change shall constitute just cause to revoke the permit.

7.   **Suspension or Revocation**

The Commissioner may suspend or revoke a permit for just cause. If suspended or revoked, the applicant may apply for an adjudicative hearing, which shall take place pursuant to the "Regulation of Adjudicative Proceedings under the Jurisdiction of the Commissioner of Financial Institutions", Regulation No. 3920 approved on June 23, 1989, pursuant to the Uniform Administrative Procedures Act of Puerto Rico.

**ARTICLE 7   GRANTING OF A LICENSE TO OPERATE AN IBE**

1.      **Filing of Documents**

Once the permit is granted to organize an IBE, the applicant shall file the following documents with the Department of State of Puerto Rico.

1.      The articles of incorporation, the partnership agreement or any other written document which establishes the legal status of the IBE or of the person of which the IBE will be a unit, together in the latter case, with the certification specified in Section 5(c) of the Act.

2.      Copy of the permit to organize an IBE granted by the Commissioner.

The Department of State of Puerto Rico shall issue, under its official seal, a certification specifying that such documents have been filed.  It is the responsibility of the applicant to submit such certification to the Commissioner before the license is granted.

2.      **Approval or Denial of the License**

The Commissioner may grant (or if deemed pertinent, conditionally grant) or deny the requested license after receiving and approving the following documents and evidences:

1.      The certification from the Department of State referred to in Paragraph 7(1) of this Article;

2.      Evidence of payment of the annual license fee in the amount of five thousand dollars (US $5,000).  The license issued by the Commissioner shall identify the activity or activities authorized to the IBE as stated in Article 10 of this

Regulation.  For this, the Commissioner shall evaluate the business history or experience of the applicants in each area;

3.    Copy of all the documents filed at the Department of State of Puerto Rico in compliance with Article 7(1) of this Regulation;

4.    Copy of the internal regulations or statutes adopted by the Board of Directors or ruling body of the IBE or of the person of which the IBE shall be a unit, certified before a notary public by its secretary or person acting in similar capacity;

5.    Evidence that the IBE has a suitable place in which to conduct its activities;

6.    Evidence that the capital of the IBE has been subscribed, issued and paid or assigned in the case of a unit, and that the IBE complies with the minimum requirement of unencumbered assets in accordance with the provisions of paragraph (5) of Article 5, or Article 5A of this Regulation, as the case may be;

7.    Evidence that the person of which the IBE is a unit or a subsidiary has complied with all the requirements of any regulatory agency responsible for supervising the activities of such person in the jurisdiction of its origin with respect to the establishment of a branch or subsidiary outside of said jurisdiction.   Such evidence may consist of a certification issued by the regulatory agency or a legal opinion acceptable to the Commissioner;

8.    A statement or resolution authenticated by a notary public in which the Board

of Directors, or the ruling body, or the person who acts in a similar capacity, of the IBE or of the person of which the IBE is a unit, indicates that the IBE has complied with all the terms and conditions of the Act and this Regulation and that it is ready to commence operations; and

9.    Any other document or information which the Commissioner may have required prior to the granting of the license.

Once the license is granted, it shall be effective on the date of its issue by the Commissioner until the expiration thereof, unless the same is suspended, revoked or renounced.  A copy of the license shall be filed in the Department of State of Puerto Rico by the IBE no later than ten (10) days after it has been granted.  A license issued to operate an IBE may not be sold, assigned, transferred, pledged, used as a guarantee or in any other way encumbered, and any other act contrary to what is provided herein shall result in the immediate revocation of the license.

Every application for license to operate an IBE shall be approved or denied by the Commissioner pursuant to the provisions in the "Regulation to Establish the Rules of Procedure for the Issuance of Licenses, Franchises and Permits" issued by the Commissioner on December 20, 1989, or any other Regulation approved subsequently to amend or substitute it.

Every denial made by the Commissioner shall be subject to review pursuant to the provisions of the Uniform Administrative Procedures Act of Puerto

Rico.

**3.     Suspension, Revocation, or Denial of a License**

    a.     The Commissioner may suspend or revoke a license to operate an IBE for any of the following reasons:

        1)     For any violation of the Act, rules, regulations, and applicable orders, or of any condition imposed by the Commissioner in writing when granting a permit or license to operate an IBE.

        2)     For carrying out the business of the IBE in a way contrary to the highest standards of financial and banking prudence.

        3)     For risking the financial security and the adequate operation of the IBE.

        4)     For acting in a way contrary or inconsistent to the public interest.

        5)     For submission by the applicants or the IBE of false evidence, documents or information.

    2.     Any IBE or the person of which the international banking entity is a unit, may surrender its license by filing with the Commissioner a statement sworn before a notary public clearly expressing its decision to surrender such license no later than forty-five (45) days prior to the date in which it intends to cease operations and surrender the license.  After receipt of the license by the Commissioner or by the designated official, the Office will proceed to perform the investigations, audits and examinations which may be deemed necessary or convenient to authorize the cessation of operations of said IBE.

After the investigations have been completed, he may postpone or authorize the cease of operations of the IBE with or without conditions.

Any IBE which surrenders its license shall comply with each and every one of the conditions imposed by the Commissioner to cease operations.

3.  If deemed necessary or convenient, the Commissioner shall order the dissolution and/or liquidation of the IBE whose license has been suspended, revoked or surrendered pursuant to Section 17 of the Act.

## ARTICLE 8   AMENDMENTS AND ISSUANCE OF ADDITIONAL CAPITAL

1.  Any amendment to the documents establishing an IBE, shall require the prior written approval of the Commissioner and shall comply with the provisions of Section 8 of the Act.

2.  Any issuance of additional shares of capital stock or issuance of additional capital by an IBE not made directly to the stockholders or owners identified in the application for a permit originally filed with the Commissioner, shall require the Commissioner's prior written approval.  Such approval shall be requested from the Commissioner at least thirty (30) days prior to the proposed issuance.

3.  Every issuance of additional shares of capital stock or issuance of additional capital made directly to the shareholders or owners of an IBE previously identified in the application for permit shall be notified to the Commissioner within ten (10) business day from the date of such issuance.

## ARTICLE 9   CHANGE IN CONTROL

1.     a.     Transactions which involve 10% or more of the stock. Every IBE, except those

organized as a unit of another person, shall obtain the prior written approval of the Commissioner for any sale, encumbrance, assignment, merger, barter, exchange or other transfer of ten percent (10%) or more of the stock, interest or participation in the capital of said IBE, to a person or group of persons acting in concert, in a single transaction or a series of transactions for that purpose, or which results in the ownership or control by any person or group of persons acting in concert, of ten percent (10%) or more of the stock, interest or participation in the capital of said IBE. Said authorization shall be requested at least thirty (30) days prior to the proposed date of such transaction.

2.      Transactions among affiliated entities.  A parent company may sell, transfer, encumber, merge, exchange or otherwise negotiate all or any of its stock, interest or capital participation in such IBE to any other person, that is not an individual, that is owned by, owns, or is under common ownership or control with such parent company with prior notification to the Commissioner.  The IBE shall notify the Commissioner no less than twenty (20) days prior to the date of the proposed transaction.  Such notification shall contain the details of the proposed transaction.  If the Commissioner does not object to the proposed transaction within the term of 20 days, it may be carried out in the way it was notified to the Commissioner.

2.      Any sale, encumbrance, assignment, merger, barter, exchange or other transfer made in violation of this Article 9 or over which the Commissioner has reason to believe that the IBE, the International Banking Center or the public interest may be affected, shall be just cause for revocation

of a license.

## ARTICLE 10.  PERMITTED ACTIVITIES

The license granted to an IBE shall empower it to operate and perform the activities authorized by the Act and this Regulation as described below.  The IBE shall request the activity or activities in which it desires to engage using the forms prescribed by the Commissioner.  The authorization to perform the requested activities shall be made taking into consideration the experience and business history of the IBE in said business categories:

1.    **Commercial Banking**

Under this category, the IBE may perform the following activities:

1.    Accept deposits from foreign persons, on demand as well as fixed term, and interbank deposits, or in any way borrow money from another IBE and from any other foreign person.  Provided, that when dealing with deposits of the Government Development Bank for Puerto Rico or the Economic Development Bank for Puerto Rico, they shall be duly collaterized by the IBE.

2.    Issue obligations to foreign persons.

3.    Make, procure, place, guarantee or service loans; provided that no such loans may be made to a domestic person, except as provided in paragraph (9)(a) of this Article and in cases of financial guarantees for transactions of issuances of public debt in Puerto Rico.

4.    1.    Issue, confirm, notify, negotiate or refinance letters of credit,

provided that the client and the beneficiary requesting the letter of credit are not domestic persons, or.

2.  Issue, confirm, notify, negotiate or refinance letters of credit, including in foreign currency, for the financing of exports, even if the beneficiary is a domestic person.

5.  Discount, re-discount, deal or otherwise trade in money orders, bills of exchange and similar instruments, provided that the drawer and the original obligor are not domestic persons.

6.  Participate in foreign exchange transactions with foreign persons.

7.  1.  Invest, in addition to securities, stocks, and notes, in bonds of the Authority for the Financing of Projects in the Caribbean Basin, securities of the Government of Puerto Rico, its public instrumentalities and agencies, municipalities and political subdivisions.  It may also invest in other local tax exempt securities in Puerto Rico.

2.  In the case of investment in securities and stocks, or other instruments that create a proprietary interest in excess of twenty-five percent (25%) of the net capital of any financial institution or insurance company, the IBE shall notify the Commissioner of such proposed acquisition thirty (30) days prior to the same.

3.  In the case of investment in securities and stocks in a sole institution

or in affiliated institutions, which investment represents twenty-five percent (25%) or more of the net capital of the IBE, it shall notify such investment to the Commissioner.

8.    Engage in international trade financing of import, export, barter and exchange of raw materials and finished products in which domestic persons participate, when the Commissioner so authorizes in writing, after determining that the local commercial and financial community is not interested in competing in those activities.

9.    Participate in the concession and guarantee of the loans granted by and/or guaranteed by the Government Development Bank for Puerto Rico and the Economic Development Bank for Puerto Rico.

10.    With previous authorization by the Secretary of the Treasury and the Commissioner and subject to the provisions of Article 10A of this Regulation,  finance, through loans or financial guarantees, projects in priority areas for the Government of Puerto Rico in such cases that have been designated as extraordinary cases by the Secretary of the Treasury and the Commissioner.

11.    Make deposits in, and in any other way give money on loan to, the Government Development Bank for Puerto Rico, the Economic Development Bank for Puerto Rico, and any bank, including banks duly organized or authorized to operate in Puerto Rico and any other IBE.

12.    Establish, with the authorization of the Commissioner, as provided in Article 10B of this Regulation, branches outside of Puerto Rico, in the continental United States, its possessions or other foreign countries.

2.    **Securities**

Under this category, an IBE may perform the following activities:

1.    Underwrite, distribute and otherwise trade in securities, notes, debt instruments, drafts and bills of exchange issued by a foreign person for ultimate purchase outside of Puerto Rico by foreign persons.

2.    Purchase and sell securities issued by a foreign person outside of Puerto Rico for foreign persons and to provide investment advise to such foreign persons.

3.    **Insurance**

Under this category the IBE may perform the following activities:

1.    Engage in insurance brokerage for risks or other objects which are located in or will be executed outside of Puerto Rico, subject to the regulations and prior written approval of the Insurance Commissioner of Puerto Rico.

2.    Underwrite insurance for risks and objects that reside, are located in or will be executed outside of Puerto Rico subject to the regulations and prior written approval of the Insurance Commissioner of Puerto Rico.

The Insurance Commissioner of Puerto Rico, through his regulations, shall have the authority to regulate the operation and supervision of the activities of the IBE related with the brokerage business and the business of underwriting foreign

risks under the Act.  Every IBE authorized to perform said insurance business shall comply with the provisions established in said regulation.  Said IBE shall maintain the accounts, contracts, files and other documentation related to insurance, separate and distinct from any other transactions and shall have the same available for easy identification and analysis by the Insurance Commissioner or his authorized representatives.  The Insurance Commissioner may charge for exams and audits following his customary practice in accordance with the guidelines established in its regulation.

4.    **Fiduciary Services**

Under this category, and IBE may act as fiduciary, executor, administrator, registrar of stocks and bonds, custodian of property, assignee, trustee, attorney-in-fact, agent or in any other fiduciary capacity, provided that such fiduciary services are not offered to, or incure to the benefit of domestic persons.

The trusts may be organized under the laws of the Government of Puerto Rico or the laws of any foreign country as determined by the IBE.

5.    **Financial Leasing**

Under this category, the IBE may acquire and lease personal property at the request and for the use of a lessee who is a foreign person.

6.    **Clearinghouse**

Under this category, an IBE may act as a clearinghouse with respect to financial contracts or instruments of foreign persons or other IBEs.

7.      **Management Services**

Under this category an IBE may organize, manage and provide management services to international financial entities, such as investment and mutual funds companies, provided that the stock or participation in the capital of such companies is not distributed directly by the IBE to domestic persons.

8.      **Additional Activities**

In addition to the aforementioned activities, upon previous authorization of the Commissioner and subject to the provisions of Article 10D of this Regulation, an IBE may provide to other international banking entities or to foreign entities or persons outside of Puerto Rico, such financial services as they may be defined and generally accepted in the banking industry of the United States, including Puerto Rico, and that are not mentioned in this Article.

9.      **General Activities**

In addition to the aforementioned activities listed by categories, any IBE may carry out the following activities:

a.      Invest for its own account in securities, stocks or obligations issued by foreign persons, the Government Development Bank for Puerto Rico, the Economic Development Bank for Puerto Rico and any other instrumentality of the Government of Puerto Rico.

b.      Borrow money from any foreign person, from any other IBE and, when said loans are duly collaterized and guaranteed, from the Government Development Bank for Puerto Rico, the Economic Development Bank for Puerto Rico and any other

instrumentality of the Government of Puerto Rico at their discretion and pursuant to their lending criteria.

c.      Engage, with the authorization of the Commissioner, in any activity of a financial nature outside of Puerto Rico which would be allowed, directly or indirectly, to a bank stock holding company or a foreign office or subsidiary of a bank of the United States under the applicable United States law.

d.      Any other activity incidental to the ones previously authorized and other activities expressly authorized by the Commissioner.

e.      Establish, with the authorization of the Commissioner as provided in Article 10C of this Regulation, a unit of services or office in Puerto Rico.

Every IBE may perform any of the activities authorized by its license in the currency of any country or in gold or silver.

## ARTICLE 10A.      PROCEDURE TO APPLY FOR AUTHORIZATION TO FINANCE PROJECTS IN PRIORITY AREAS FOR THE GOVERNMENT OF PUERTO RICO IN EXTRAORDINARY CASES.

Every international banking entity may apply for authorization of the Secretary of the Treasury and the Commissioner to finance projects in priority areas for the Government of Puerto Rico in extraordinary cases, as provided in this Article.

For purposes of this Article 10A, the term "extraordinary" means financing, in any of its modalities, that under normal circumstances would not be allowed to the IBEs.

**1.      When a Determination of Priority Area for the Government of Puerto Rico Exists.**

By circular letter to such effects, the Commissioner, in agreement with the Secretary of the Treasury, may announce such areas they determine are priority for the Government of Puerto Rico.  In the case of a loan to finance a project in an area previously notified as priority, an IBE may apply to the Secretary of the Treasury and the Commissioner for authorization to grant an extraordinary loan because it would benefit an area that has been designated as priority for the Government.  Such application shall comply with the provisions of paragraph number 3 of this Article.

2.      **When a Determination of Priority Area for the Government of Puerto Rico Does Not Exist.**

In lack of the determination mentioned in paragraph 1 of this Article, an IBE may request the Secretary of the Treasury and the Commissioner o determine that a loan qualifies as extraordinary and that it affects an area which should be designated as priority for the Government.  Said application shall comply with the provisions of paragraph number 3 of this Article.

3.      **Requirements to Apply for Authorization to Finance Projects in Priority Areas for the Government of Puerto Rico in Extraordinary Cases.**

The applications under paragraphs 1 and 2 of this Article shall be filed before the Commissioner who will handle the same before the Secretary of the Treasury.  They shall be in writing, in the forms prepared by the Commissioner, which shall be sworn by the applicant before a notary public authorized to practice in Puerto Rico.  In addition to the typical information of such document, said applications shall include:

1.    Specification as to whether the project relates to an area previously designated as priority interest for the Government of Puerto Rico.

2.    If the project does not relate to an area previously designated as priority interest for the Government of Puerto Rico, basis and reasons for which it should be determined that the area which such project intends to finance must be designated as  one of proprietary interest for the Government of Puerto Rico, for purposes of the financing for which authorization is requested.

3.    Description of the project and proposed financing of the same by the IBE.  A detailed description of the type of project, together with financing details that the IBE wants to offer and for which it requests authorization.

4.    Justification

   1)    It shall be specified whether the banks organized or authorized to do business in Puerto Rico participate in any way in the type of project object of the application.   In such cases of IBEs which are units or branches, or are, in any way affiliated with a bank authorized to do business in Puerto Rico, the justification shall also specify the reasons for which it is not justified that such bank grants the financing directly.

   2)    The IBE shall include a justification with a description of the reasons that the Secretary of the Treasury and the Commissioner must consider to designate the case as extraordinary, and therefore, warranting the requested petition.

5.    Additional information.  The Secretary of the Treasury and/or the Commissioner may

require, and the applicant shall submit, any other information they deem necessary for an adequate assessment of the application.

4.    **Nature of the Determination**

Because it is a matter of public policy to determine which areas are priority for the Government of Puerto Rico, as well as to determine whether a case is extraordinary for the financing of a priority area for the government, these determinations are strictly discretional, for the Secretary of the Treasury as well as for the Commissioner.  Therefore, the approval or denial of this application shall not be subject of revision nor to the provisions of the "Regulation to Establish the Rules of Procedure for the Issuance of Licenses, Franchises and Permits," issued by the Commissioner on December 20, 1989, or any other Regulation approved subsequently to amend or substitute the same.  Every denial for such application shall be final and binding.

**ARTICLE 10B        PROCEDURE TO ESTABLISH BRANCHES**

Every IBE may request the Commissioner, and he, upon his sole discretion, may approve or deny the permit to establish branches outside of Puerto Rico, including the United States, its possessions and territories or in any foreign country, as provided by this Article.

1.    **General Requirements of the Application to Establish Branches**

Every application for the establishment of a Branch shall be submitted in writing, before the Commissioner, in the forms prepared by him, which shall be sworn by the president, or by an officer duly authorized to carry out these efforts through a resolution by the applying IBE's Board of Directors.  The application shall contain all such information

required by this Regulation and by the Commissioner.

2.    **Investigations**

After having submitted and application for the establishment of a Branch in the manner specified by this Regulation and having paid the corresponding fees, the Commissioner or his representatives shall carry out the investigations necessary to determine whether such application should be granted or denied.

3.    **Charges for Study and Annual Fee**

The expenses the Commissioner incurs in due to the aforementioned investigation shall be paid for by the applicants.  The Commissioner shall claim such investigation expenses through the filing of a duly filled Reimbursement Requisition on the form that the Commissioner may design for such purposes.  Every application to establish a Branch of an IBE outside of Puerto Rico shall be enclosed with the charges for annual license as established in paragraph 13 of this Article.

4.    **Information Contained in the Application Form to Establish a Branch**

Every application to establish a Branch of an IBE shall be filed in duplicate copies in the forms prescribed by the Commissioner and shall contain:

1.    <u>Financial Condition of The IBE.</u>

Copy of the last audited financial statement of the IBE.  The Commissioner may require additional reports if he deems so necessary.

2.    <u>Location</u>

Exact location, if known, or the area where the proposed Branch is to be

established.

3. <u>Certification of other Necessary Authorization</u>

The applying IBE shall submit a certification of authorization to establish the Branch by the regulatory agencies of the country or state where such branch is proposed to be set. In such cases in which the IBE shall not be subject to the regulatory agencies, the IBE shall so certify it.

4. <u>Additional Information</u>

The Commissioner may require any other information he deems necessary for an adequate assessment of the application.

The applicant may submit any other additional information deemed appropriate and necessary to sustain the application.

5. **Period to Approve or Deny an Application to Establish a Branch**

Every application to establish a Branch outside of Puerto Rico shall be approved or denied by the Commissioner pursuant with the provision of Rule No. 6 of the "Regulation to Establish the Rules of Procedure for the Issuance of Licenses, Franchises and Permits", issued by the Commissioner on December 20, 1989, or any other subsequent Regulation approved to amend or substitute it. Every denial made by the Commissioner shall be subject to review according to the provisions of the Uniform Administrative Procedures Act of Puerto Rico.

6. **Branch Transfer**

1. No IBE shall transfer the location of its Branches without previously notifying the

Commissioner of such transfer at least sixty (60) days prior to the date in which the new location begins operating. If no objection to the transfer is received from the Commissioner, within the referred period, it shall be deemed as authorized by the Commissioner. Nevertheless, such authorization by the Commissioner should not be deemed as if it is extended to such other permits or authorizations of other foreign agencies necessary for the transfer.

2. Copy of such other permits or authorizations of other foreign agencies necessary for the transfer.

3. Notice of transfer of localization of any Branch, shall be signed by the President or officer authorized to perform such efforts by the Board of Directors of the IBE.

4. The IBE shall submit any other information the Commissioner may require regarding the proposed transfer of a Branch.

7. **Closing or Merger of Branches**

No IBE shall close o merge a Branch without notifying the Commissioner, in writing, thirty (30) days prior to the date of the proposed merger or closing.

8. **Reasons to Deny a License to Establish a Branch**

The Commissioner may deny an application to establish a Branch for any of the following reasons:

1. In the opinion of the Commissioner, the financial and economic condition of the applying IBE does not allow the establishment of the proposed Branch.

2. The officers who shall manage or supervise the proposed Branch do not have, in the

opinion of the Commissioner, sufficient experience, moral solvency or financial or commercial ability to carry out the business of the Branch.

3.    The IBE is not complying with the applicable provisions of law or refuses to abide by any order issued by the Commissioner by virtue of the powers conferred to him by the Act.

9.    **Confidentiality**

Any study, finding, conclusion and recommendations the Commissioner or his representatives may make with regards to any application to establish a Branch shall be considered privileged and confidential by nature and shall not be disclosed.

10.    **Granting of the License**

If the establishment or transfer of a Branch is approved, the Commissioner shall issue a license to the applying IBE, which shall indicate the exact address where it will be located and its issue date and effective period.

11.    **Period to Begin Operations in Branches**

Every Branch shall begin operating within three hundred and sixty-five (365) days after the date in which the Commissioner approved its establishment.  If, for any justified reason, the IBE could not begin operating the Branch within the period herein established, it may request the Commissioner for an extension for the commencement of such operations. Such application must specify the term of such extension.

12.    **Cancellation of Authorization and License to Operate Branches**

The Commissioner shall have the faculty to order the cancellation of an authorization

or license to operate one or more Branches, for any of the reasons set forth in this Regulation or for any violation to any of the terms, conditions or limitations the Commissioner may have imposed for the operation of such Branch(es), or an order issued by the Commissioner with regards to the operations of such Branch(es), if the Commissioner so determines pursuant to the provisions of the Uniform Administrative Procedures Act of Puerto Rico.

When, in the Commissioner's opinion, there is a situation that may cause serious immediate damage to the industry or particular persons, he may summarily order the cancellation of the license to operate one or more Branches, passing over the requirement of due notice and hearing, pursuant to the provisions in Article 10(10)(i) of Act No. 4 of October 11, 1985, as amended, known as the "Office of the Commissioner of Financial Institutions' Act", 7 L.P.R.A. §2010 (10)(i).

13.    **Annual Licenses, Fees**

At the anniversary of each year, every IBE shall obtain from the Commissioner a license for its Main Office and one for each Branch outside of Puerto Rico, after payment of an annual fee of five thousand dollars ($5,000.00) for the Main Office and one thousand dollars ($1,000.00) per Branch.

14.    **Information and Investigation**

The IBE, its officers and employees are obligated to furnish and facilitate to the Commissioner or his authorized representatives of all the information they request in any investigation regarding the operations and services of Branches outside of Puerto Rico and for the implementation of the provisions of the Act, as amended, and this Regulation.

**ARTICLE 10C.    PROCEDURE TO APPLY FOR AUTHORIZATION TO ESTABLISH A UNIT OF SERVICES OR OFFICE IN PUERTO RICO**

Every IBE may request the Commissioner, and he, upon his sole discretion, may approve or deny the permit to establish a Unit of Services or Office in Puerto Rico, as provided by this article.

**1.    General Requirements of the Application to Establish a Unit of Services or Office in Puerto Rico**

Every application for the establishment of a Unit of Services or Office of an IBE in Puerto Rico shall be submitted in writing, before the Commissioner, in the forms prepared by him, which shall be sworn by the president, or by an officer duly authorized to carry out these efforts through a resolution by the applying IBE's Board of Director. The application shall contain all such information required by this Regulation and by the Commissioner.

**2.    Investigations**

After having submitted an application for the establishment of a Unit of Services or Office in Puerto Rico in the manner specified by this Regulation, the Commissioner or his representatives shall carry out all the investigations that may be necessary to determine whether such application should be granted or denied.

**3.    Information Contained in the Application Form to Establish a Unit of Services or an Office in Puerto Rico**

Every application to establish a Unit of Services or Office of an IBE shall be filed in duplicate copies in the forms prescribed by the Commissioner and shall contain:

1.    <u>Financial Condition of The IBE.</u>

Copy of the last audited financial statement of the IBE.  The Commissioner may require additional reports if he deems so necessary.

2.  Location

Exact location, if known, or the area where the Unit of Services or Office is to be established.

3.  The transactions that are to be carried out in the Unit of Services.

4.  Any other information required by the Commissioner.

**4.    Period to Approve or Deny an Application to Establish**

**a Unit of Service or Office in Puerto Rico**

Every application to establish a Unit of Services or Office in Puerto Rico shall be approved or denied by the Commissioner pursuant with the provision of Rule No. 6 of the "Regulation to Establish the Rules of Procedure for the Issuance of Licenses, Franchises and Permits", issued by the Commissioner on December 20, 1989, or any other subsequent Regulation approved to amend or substitute it.  Every denial made by the Commissioner shall be subject to review according to the provisions of the Uniform Administrative Procedures Act of Puerto Rico.

**5.    Special Rule for the Operation of Units of Services in Puerto Rico**

The IBE may discontinue operations in the Unit of Services when it considers convenient, but must previously notify the Commissioner, in writing, of the proposed action. After discontnuing the operation of a Unit of Services, the IBE may not re-open it, unless it submits a new notification to the Commissioner pursuant to this Regulation.

6. **Information Contained in the Notification Form for the Establishment  or Relocation of Offices in Puerto Rico**

Every notification for the establishment or relocation of an Office in Puerto Rico shall contain the following information:

1. Exact location of the current and proposed Office.

2. The specific operations that will be carried out in the Office.

3. Any additional information the Commissioner may require.  Such notification shall be signed under oath by the president or an officer duly authorized to perform these actions on behalf of the IBE.

7. **Reasons to Deny a License to Establish a Unit of Services or an Office in Puerto Rico**

The Commissioner may deny an application to establish a Unit of Services or an Office  in Puerto Rico for any of the following reasons:

1. In the opinion of the Commissioner, the financial and economic condition of the applying IBE does not allow the establishment of the proposed Unit of Services or Office.

2. The officers who shall manage or administrate the proposed Office do not have, in the opinion of the Commissioner, sufficient experience, moral solvency or financial or commercial ability to carry out the business of the Office.

3. The IBE is not complying with the applicable provisions of law, non-compliance which materially affects the financial condition of the IBE, or refuses to abide by any order issued by the Commissioner by virtue of the powers conferred to him by the

Act, in spite of having demanded compliance.

4.    When, in the opinion of the Commissioner, reasons of public interest justify such denial.

8.    **Confidentiality**

Any study, finding, conclusion and recommendations the Commissioner or his representatives may make with regards to any application to establish a Unit of Services or Office in Puerto Rico shall be considered privileged and confidential by nature and shall not be disclosed.

9.    **Granting of the License**

If the establishment or transfer of a Unit of Services or Office is approved, the Commissioner shall issue a license to the applying IBE, which shall indicate the exact address where it will be located in the area wher it shall render services and its issue date and effective period.

10.   **Period to Begin Operations in Units of Service or Offices**

Every Unit of Services or Office in Puerto Rico shall begin operating within three hundred and sixty-five (365) days after the date in which the Commissioner has approved its establishment.  If, for any justified reason, the IBE could not begin operating the Unit of Services or Office in Puerto Rico within the period herein establish, it may request the Commissioner for a extension for the commencement of such operations.  Such application must specify the term of the extension.

11.   **Cancellation of Authorization and License to Operate Units of Services and Offices in**

**Puerto Rico**

The Commissioner shall have the faculty to order the cancellation of an authorization or license to operate one or more Unit of Services or Offices in Puerto Rico, for any of the reasons set forth in this Regulation or for any violation to any of the terms, conditions or limitations the Commissioner may have imposed for the operation of such Unit(s) of Services or Office(s) in Puerto Rico, or an order issued by the Commissioner with regards to the operations of the same, if the Commissioner so determines, after an administrative hearing held pursuant to the provisions of the Uniform Administrative Procedures Act of Puerto Rico.

When, in the Commissioner's opinion, there is a situation that may cause serious immediate damage to the industry or particular persons, he may summarily order the cancellation of the license to operate one or more Units of Service or Offices, passing over the requirement of due notice and hearing, pursuant to the provisions in Article 10(10)(i) of Act No. 4 of October 11, 1985, as amended, known as the "Office of the Commissioner of Financial Institutions' Act", 7 L.P.R.A. §2010 (10)(i).

12.    **Information and Investigation**

The IBEs, their officers, and employees are obligated to furnish and facilitate to the Commissioner, or his authorized representatives, all of the information requested in any investigation regarding the IBE, including the operations and services of the Units of Services or Offices in Puerto Rico or for the implementation of the provisions of the Act, as amended, and this Regulation.

**ARTICLE 10D.    PROCEDURE TO APPLY FOR AUTHORIZATION TO PROVIDE OTHER FINANCIAL SERVICES TO INTERNATIONAL BANKING ENTITIES OR FOREIGN ENTITIES OUTSIDE OF PUERTO RICO**

1.    **Faculty to Offer other Financial Services to International Banking Entities or Foreign Entities Outside of Puerto Rico**

Every IBE may apply to the Commissioner for authorization to offer IBEs or foreign entities outside of Puerto Rico other types of financial services not set forth in Act 52, as amended, pursuant to the provisions of this Article.

The authorization of the Commissioner to offer financial services not set forth in Act 52, as amended, may extend to all other IBEs or be limited to those which comply with the requirements that may be established by the Commissioner by means of a circular letter.

2.    **General Requirements of the Application to Offer other Financial Services to International Banking Entities or Foreign Entities Outside of Puerto Rico**

Every IBE interested in offering other types of financial services to IBEs or foreign entities outside of Puerto Rico, shall file an application, in writing, before the Commissioner, signed by a person duly authorized to carry out such actions on behalf of the IBE.

3.    **Information Contained in the Application Form**

Every application to offer other types of financial services to IBEs or foreign entities outside of Puerto Rico, shall be filed in duplicate copies in the forms prescribed by the Commissioner and shall contain:

1.    <u>Financial Condition of the IBE.</u>

Copy of the last audited financial statement of the IBE.

2.    <u>Description of the Proposed Financial Service or Services</u>

Detailed description of the type of financial service the IBE wishes to offer to other IBEs or foreign entities outside of Puerto Rico.

The legal nature of the proposed service and a description of the applicable law shall be included.

3.    <u>Certification</u>

A certification signed by an authorized officer of the IBE to state that the concession of the requested type of financial service shall be performed according to the applicable laws and regulations.

4.    <u>Additional Information</u>

The Commissioner may require, and the applicant shall submit, any other information he deems necessary for an adequate assessment of the application.

4.    **Period to Approve or Deny an Application**

Every application to offer other types of financial services shall be approved or denied by the Commissioner according to the provisions of the "Regulation to Establish the Rules of Procedure for the Issuance of Licenses, Franchises and Permits", issued by the Commissioner on December 20, 1989, or any other subsequent Regulation approved to amend or substitute it.

Every denial made by the Commissioner shall be subject to review according to the

provisions of the Uniform Administrative Procedures Act of Puerto Rico.

5.     **Duty to Furnish Information**

The IBEs, their officers, and employees shall furnish to the Commissioner or his authorized representatives, all of the information requested in any investigation regarding the implementation of the provisions of this Article.

## ARTICLE 11 RECORDS, REPORTS AND SUPERVISION

1.     **Accounts and Records**

1.     Every IBE must maintain accounts and records of all the transactions performed by it in the normal course of its operations.  The records of the IBE shall consist of entries written in ink or typewritten, computerized printouts and other legible printed forms.

The original accounting books and records shall be kept in the IBEs place of business in Puerto Rico.  Nevertheless, in the event that the IBE is a unit or subsidiary of a foreign person, the original accounting books and registers of the IBE may be recorded and kept in duplicate in the country of origin.  The accounting books and records of the IBE shall be separate and apart from the accounting books of any other person, including the person of which the IBE is a unit or subsidiary.

2.     The records of lending transactions and other extensions of credit must include original documents or photocopies and information which includes account number, the name, physical and postal address and occupation of the debtor, a statement of the proposed use of the loan and the terms and conditions of the same.  The IBE shall have the flexibility to manage and identify the deposit accounts in its possession as it

may deem appropriate, provided it maintains in its files a record of every account available for examination by the Commissioner or his authorized representatives, which includes at least the account number and the name, physical and mailing address and the occupation of the depositors.

3.    Every IBE shall be subject to the inspection and supervision of the Commissioner who will examine the operations of the IBE.  An examination fee of three hundred fifty dollars ($350.00) per day or fraction thereof shall be charged to each IBE per examination, for each examiner who participates in the examination.  Such payment shall be made by check issued to the order of the Secretary of the Treasury of Puerto Rico no later than thirty (30) days following the date of the invoice.

The records of the IBE and the working documents of the external auditors must be available for examination by the Commissioner's examiners for a period of at least five (5) years after the closing of the fiscal year of the IBE in which the records were made.

2.    **Reports**

Every IBE must remit to the Commissioner:

1.    A report of its condition and results of operations as of the last day of each quarter of the year, in the form prescribed by the Commissioner, within thirty (30) days after the close of each quarter, and,

2.    Its annual audited financial statements at the closing of its fiscal year or of the person of which the IBE is a unit, prepared consistently with the reports of condition filed

quarterly.  Together with said financial statements, a statement shall be included stating that the IBE is complying with the Act and this Regulation, by duly filling the Form which the Commissioner may design from time to time and circulate by means of a Circular Letter for such purposes.  Such Form shall be certified by an independent Certified Public Accountant authorized to practice under the laws of Puerto Rico.  The financial statements shall be received by the Commissioner no later than ninety (90) days after the end of the fiscal year of the IBE and the same must comply with the Generally Accepted Accounting Principles or with equivalent requirements of other jurisdictions, with the adjustments, notes and explanations necessary to comply with the Generally Accepted Accounting Principles in the United States of America.

**ARTICLE 12 CONFIDENTIALITY**

The information obtained by the Commissioner as a result of any investigation or report or provided by the IBE or its organizers, stockholders or owners with the purpose of obtaining permit or license or to comply with any provision of the Act, shall be kept confidential and shall not be disclosed to any person, except when:

(i)    the disclosure of such information is required by law or judicial order, or

(ii)   there is a formal request of a domestic or foreign government agency in the course of its supervisory duties and the Commissioner determines that such disclosure is in accordance with the public interest.  Nevertheless,  the provision of this subparagraph (ii) shall not extend in any case to information about the clients of the IBE.

The information related to the identity, financial statements, transactions and client's accounts obtained by the directors, officers, employees and agents of the IBE or persons involved with its business such as lawyers, auditors or accountants and others, shall be kept confidential, except when requested by the Commissioner or the Insurance Commissioner or consented by the client or to comply with a judicial summon legally issued by a court of competent jurisdiction in Puerto Rico.

When the Commissioner understands that the confidentiality provisions herein contained have been violated or that there has been an attempt to disclose confidential information, he will take the necessary action pursuant to section 18 of the Act, including the suspension or destitution of the director, officer or employee of the IBE involved in said violation, and shall impose upon the IBE as well as on the offending individuals, the corresponding administrative fines pursuant to the Act and in accordance with the magnitude of the violation, not to exceed five thousand dollars (US $5,000) per violation.

The Commissioner may make public the statistical facts regarding the activities of the IBE as an industry, as long as such information is revealed in a consolidated or aggregated manner.

## ARTICLE 13 REMEDIES AND PENALTIES

1. **Cease and Desist Orders**

    The Commissioner may issue cease and desist orders and orders of immediate action and take the administrative actions conferred upon him by the Act and by Act No. 4 of October 11, 1985, as amended, when in the Commissioner's opinion there has been a violation or an attempt to violate the Act or this Regulation or an action has been taken

which may jeopardize the public interest in general or a particular person. If an order to cease and desist is issued, the IBE or the person to whom the order is issued may request an adjudicative hearing that will be held pursuant to the provisions of the "Regulation of Adjudicative Proceedings under the Jurisdiction of the Commissioner of Financial Institutions", pursuant to the Uniform Administrative Procedures Act of Puerto Rico.

2.    **Penalties**

Any violation of the Act or this Regulation shall be punished with the penalties established by the Act, and if the Act does not provide a penalty, the Commissioner may impose the administrative fine which he deems appropriate, which shall not be less than five hundred dollars (U.S. $500) and no more than five thousand dollars (U.S. $5,000) per violation.

## ARTICLE 14 EXCLUSION CLAUSE

Act No. 60, approved June 18, 1963, as amended, known as the "Uniform Securities Act of Puerto Rico", shall not apply to transactions of securities conducted by an IBE with foreign persons in connection with securities issued outside of Puerto Rico, provided that the IBE is authorized to perform such activity under the Act.

## ARTICLE 15 REPEAL

Regulation No. 4324 to implement Act. No. 52 of August 11, 1989, is hereby repealed.

## ARTICLE 16 EFFECTIVE DATE

This Regulation shall become effective thirty (30) days after it has been filed in the Department of State of Puerto Rico, pursuant to the provisions of the Uniform Administrative

Procedures Act of Puerto Rico.

**ARTICLE 17 APPROVAL DATE**

Approved in San Juan, Puerto Rico, on July _23_ , 1997.


[Signed]_____          [Signed]
Manuel Diaz Saldaña          Joseph P. O'Neill
Secretary of the Treasury    Commissioner of Financial
President, Financial Board   Institutions